[Cite as *Sebold v. Latina Design Build Group, L.L.C.* , 2021-Ohio-124.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

MIKKI SEBOLD, ET AL.,    :

  Plaintiffs-Appellants,  :

                No. 109362

  v.          :

LATINA DESIGN BUILD
GROUP, L.L.C., ET AL.,   :

  Defendants-Appellees.  :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** January 21, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-918180

---

### *Appearances:*

The Gareau Law Firm Co., L.P.A., and David M.Gareau,
*for appellants*.

McCarthy, Lebit, Crystal & Liffman Co., L.P.A., David M.
Cuppage, and Nicholas R. Oleski, *for appellees*.

LARRY A. JONES, SR., P.J.:

{¶ 1} Plaintiffs-appellants Mikki and Mark Sebold ("the Sebolds") appeal from the trial court's order granting a stay and compelling arbitration. For the reasons that follow, we affirm.

## Substantive Facts and Procedural History

{¶ 2} In 2016, the Sebolds contacted defendants-appellees Latina Design Build Group, L.L.C., Anthony Latina, and Darla Kurtz ("collectively referred to as Latina") to inquire about a large scale remodel of their home. The parties entered into an initial contract to construct an addition to the Sebolds' home for $239,909.46. The Sebolds' lender would not underwrite the contract so the parties amended the contract to $212,322.45, and Latina began work on the house.

{¶ 3} The contract contained an arbitration clause that stated:

14. Arbitration

Disagreements arising out of contract or from breach thereof shall be subject to arbitration and this agreement shall be enforceable under prevailing arbitration law. Parties may agree on one arbitrator, otherwise there shall be three, one named in writing by each of the parties within five days after notice of arbitration by either party upon the other, a third would be selected by these two arbitrators within five days thereafter. No arbiter shall be financially interested in contract or affairs of either party. Costs incurred to be divided equally between contractor and owner.

{¶ 4} According to Latina, it completed the work in the fall of 2017 but the Sebolds paid less than the amount due on the contract. The Sebolds contend that Latina did not complete construction and they paid almost all of what was due, $205,952.24 of the $212,322.45 contract price. Latina filed a mechanic's lien on the Sebolds' house in December 2017, demanding $58,042.76.

{¶ 5} In January 2019, the Sebolds decided to cancel their contract with Latina, purportedly under the Ohio Home Solicitation Sales Act ("HSSA"), by sending a letter to Latina cancelling the contract and asking for a return of their

money. The Sebolds filed the instant lawsuit, seeking damages and equitable relief arising from claims for violations of the Ohio Home Construction Services Supplier Act; breach of contract; breach of implied duty to perform in a workmanlike manner; violations of the Ohio Consumer Sales Practices Act ("CSPA"); personal liability against Latina's owner Anthony Latina and employee Darla Kurtz; declaratory relief as to the validity of the mechanic's lien filed against the property; declaratory relief as to the terms of the parties' agreement; violations of HSSA; and a declaration that the cancellation of the parties' contract by the Sebolds pursuant to the HSSA rendered the arbitration clause void.

{¶ 6} Latina moved to stay the case and compel arbitration, which the Sebolds opposed. The Sebolds moved to compel responses to interrogatories and to conduct limited discovery, which Latina opposed. The trial court denied the Sebolds' motions and granted Latina's motion to stay and compel arbitration.

{¶ 7} The Sebolds filed a notice of appeal and raise two assignments of error for our review.

### Assignments of Error

I. The trial court erred in granting Appellees' Motion to Stay and to Compel Arbitration because (a) the arbitration clause's scope did not allow referral for all matters contained in the Complaint; (b) the arbitration clause is so deficient that it is not enforceable; and (c) the arbitration clause is procedurally and substantively unconscionable.

II. The trial court erred in enforcing the arbitration clause when there was unrebutted evidence that Appellees had violated the Home Solicitation Sales Act and that Appellants had validly cancelled the contract under the Home Solicitation Sales Act, in contravention of

this Court's holding in *Wisniewski v. Marek Builders, Inc.* (2017-Ohio-1035, 87 N.E.3d 696 (8th Dist.)).

### Arbitration Generally and Standard of Review

**{¶ 8}** In Ohio, there is a strong public policy favoring arbitration of disputes. Ohio courts have recognized a "presumption favoring arbitration" that arises "when the claim in dispute falls within the scope of the arbitration provision." *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 27, citing *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 471, 700 N.E.2d 859 (1998).

**{¶ 9}** Under R.C. 2711.02, a court may stay trial of an action upon application of a party if "(1) the action is brought upon any issue referable to arbitration under a written agreement for arbitration, and (2) the court is satisfied the issue is referable to arbitration under the written agreement." *Seyfried v. O'Brien*, 2017-Ohio-286, 81 N.E.3d 961, ¶ 17 (8th Dist.), citing *Austin v. Squire*, 118 Ohio App.3d 35, 37, 691 N.E.2d 1085 (9th Dist.1997).

**{¶ 10}** This court applies an abuse of discretion standard when addressing whether a trial court has properly granted a motion to stay litigation pending arbitration. *Seyfried* at ¶ 18, citing *McCaskey v. Sanford-Brown College*, 8th Dist. Cuyahoga No. 97261, 2012-Ohio-1543, ¶ 7. This court applies a de novo standard of review, however, when reviewing the scope of an arbitration agreement, that is, whether a party has agreed to submit a certain issue to arbitration. *Seyfried* at *id.*, citing *McCaskey* at *id.* This court also applies a de novo standard of review over a

trial court's decision on unconscionability of an arbitration clause. *Seyfried* at *id.,* citing *McCaskey* at ¶ 8, citing *Taylor Bldg.* Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

## Arbitration Clause

{¶ 11} In the first assignment of error, the Sebolds contend that the trial court erred in granting Latina's motion to stay and compel arbitration.

## Whether the Sebolds Agreed to Arbitrate

{¶ 12} In *Seyfried*, this court noted:

> To determine whether a party has agreed to arbitrate, the courts apply ordinary principles that govern the formation of contracts. In order for a valid contract to exist, there must be mutual assent on the essential terms of the agreement, which is usually demonstrated by an offer, acceptance of the offer, and consideration. "[Q]uestions of contract formation and intent remain factual issues to be resolved by the fact finder after careful review of the evidence." Specifically, the question of whether the parties agreed to arbitrate their disputes is a matter of contract and the terms of a contract are a question of fact.

(Citations omitted). *Id.* at ¶ 19.

{¶ 13} The Sebolds signed an agreement to arbitrate any "disagreements arising out of contract or breach thereof" with Latina when they executed the contract with Latina to remodel their home. The Sebolds claim that because the arbitration clause was so narrowly drafted, they never agreed to arbitrate any claims unrelated to a breach of contract, such as their claims relating to rescission

or cancellation of their contract, tort claims, other statutory claims, and claims relating to the invalid mechanic's lien.

{¶ 14} For every claim, including statutory claims, courts must consider whether the parties agreed to arbitrate the issue. *Academy of Medicine v. Aetna Health, Inc.*, 108 Ohio St.3d 185, 2006-Ohio-657, 842 N.E.2d 488, ¶ 20. Courts look at whether "'an action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement.'" *Alexander v. Wells Fargo Fin. Ohio 1, Inc.*, 122 Ohio St.3d 341, 2009-Ohio-2962, 911 N.E.2d 286, ¶ 24, quoting *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir.2003); *see also Park Bldg. Condominium Assn. v. Howells & Howells Ents., L.L.C.*, 2017-Ohio-1561, 90 N.E.3d 131, ¶ 16 (8th Dist.); *Ohio Plumbing, Ltd. v. Fiorilli Constr., Inc.*, 2018-Ohio-1748, 111 N.E.3d 763, ¶ 15 (8th Dist.). Thus, in this case, the trial court had to consider whether the Sebolds' claims stemmed from their contractual relationship with Latina.

{¶ 15} We are not persuaded by the Sebolds' argument that their claims fall outside of their agreement to arbitrate — none of their claims could be maintained without reference to the contract and none of the claims preclude arbitration. *See generally Zubek v. Dearborn*, 8th Dist. Cuyahoga No. 107833, 2019-Ohio-3765, ¶ 24 (noting that Ohio courts have consistently held that claims under the CSPA do not preclude arbitration) and *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (recognizing that statutory claims may be arbitrated and holding that while a party may exclude

statutory claims from the scope of an agreement to arbitrate, a party does not forgo substantive rights afforded by a statute by agreeing to arbitrate a statutory claim).

{¶ 16} In their complaint, the Sebolds allege that Latina violated the Home Construction Service Suppliers Act because the amended contract was not in writing and the arbitration clause was missing essential terms; Latina violated the CSPA by breaching the contract; and Latina violated the HSSA because Latina did not recognize the Sebolds' attempt to cancel the contract under the HSSA. These are all disputes that emanate from the parties' contractual relationship; in other words, they are "[d]isagreements arising out of contract," and fall squarely under the arbitration provision.

**Essential Terms of the Agreement**

{¶ 17} The Sebolds also contend that the arbitration clause is missing essential terms. According to the Sebolds, the arbitration clause (1) must expressly state that the arbitration is binding and (2) fails to set forth the rules in arbitration. The Sebolds cite to no authority to support this claim.

{¶ 18} R.C. Chapter 2711 governs arbitration in Ohio. R.C. 2711.01 states:

> A provision in any written contract, except as provided in division (B) of this section, to settle by arbitration a controversy that subsequently arises out of the contract, or out of the refusal to perform the whole or any part of the contract, or any agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, or arising after the agreement to submit, from a relationship then existing between them or that they simultaneously create, shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract.

{¶ 19} R.C. 2711.01 does not require that an agreement to arbitrate expressly state that the parties shall proceed to "binding" arbitration in order for the agreement to be enforceable. Rather, the statute provides that if the parties enter into an agreement, the agreement, subject to a few exceptions, shall be valid, irrevocable, and enforceable.

{¶ 20} R.C. 2711.08 states that the award made in an arbitration proceeding must be in writing and signed by a majority of the arbitrators. Either party can, within a year after the award is issued, "apply to the court of common pleas for an order confirming the award." R.C. 2711.09. Thereafter, the court of common pleas can, assuming the parties comply with the procedural requirements in R.C. 2711.14, enter a judgment confirming the award. R.C. 2711.12.

{¶ 21} This court has noted that "[t]he very definition of arbitration requires a 'final and binding award.'" *Delvito v. Autos Direct Online, Inc.*, 2015-Ohio-3336, 37 N.E.3d 194, ¶ 41 (8th Dist.), fn. 8. We find (and the Sebolds cite no authority that states otherwise) no requirement that the contract explicitly state that the arbitration is binding.

{¶ 22} The Sebolds also fail to cite any authority to support their argument that the arbitration clause is missing an essential term because the agreement does not state the rules of arbitration. There is no requirement under Ohio law that the arbitration clause include the rules of arbitration. *See Sikes v. Ganley Pontiac Honda, Inc.*, 8th Dist. Cuyahoga No. 82889, 2004-Ohio-155, ¶ 18 ("[Plaintiff] cites no authority supporting her proposition that the arbitration clause is required to

relay * * * an explanation of arbitration, the designated arbitration program, the costs of arbitration, the party responsible for paying, the applicable law governing arbitration, the discovery process, the right to bring an attorney, the right to punitive damages, and the appeal process.").

## Unconscionability

{¶ 23} Next, the Sebolds claim the arbitration clause is both procedurally and substantively unconscionable.

{¶ 24} Unconscionability embodies two separate concepts: (1) unfair and unreasonable contract terms, i.e., substantive unconscionability; and (2) an absence of meaningful choice on the part of one of the parties, i.e., procedural unconscionability. *Taylor Bldg.*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, at ¶ 34. A party asserting the unconscionability of a contract "must prove a quantum of both substantive and procedural unconscionability." *Hayes v. Oakridge Home,* 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 30; *Taylor Bldg.* at *id.* These two concepts create a two-prong conjunctive test for unconscionability. *Gates v. Ohio Savs. Assn.*, 11th Dist. Geauga No. 2009-G-2881, 2009-Ohio-6230, ¶ 47; *Strack v. Pelton*, 70 Ohio St.3d 172, 637 N.E.2d 914 (1994). Again, we review whether an arbitration agreement is enforceable in light of a claim of unconscionability using a de novo standard of review. *Hayes* at ¶ 21, citing *Taylor Bldg.* at ¶ 37.

{¶ 25} In determining whether an agreement is procedurally unconscionable, courts consider the relative bargaining positions of the parties

including each party's age, education, intelligence, experience, and who drafted the contract. *Taylor Bldg.* at ¶ 44. Additional factors that may contribute to a finding of procedural unconscionability include the following:

> "belief by the stronger party that there is no reasonable probability that the weaker party will fully perform the contract; knowledge of the stronger party that the weaker party will be unable to receive substantial benefits from the contract; knowledge of the stronger party that the weaker party is unable reasonably to protect his [or her] interests by reason of physical or mental infirmities, ignorance, illiteracy or inability to understand the language of the agreement, or similar factors."

*Id.*, quoting Restatement of the Law 2d, Contracts, Section 208, Comment d (1981).

{¶ 26} We note, however, that "[i]nequality of bargaining power alone is insufficient to invalidate an otherwise enforceable arbitration contract." *Neel v. A. Perrino Constr., Inc.*, 2018-Ohio-1826, 113 N.E.3d 70, ¶ 24 (8th Dist.), citing *Taylor Bldg.* at *id.*

{¶ 27} "'A determination of unconscionability is a fact-sensitive question that requires a case-by-case review of the surrounding circumstances.'" *Brunke v. Ohio State Home Servs., Inc.*, 9th Dist. Lorain No. 08CA009320, 2008-Ohio-5394, ¶ 8, quoting *Featherstone v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 159 Ohio App.3d 27, 2004-Ohio-5953, 822 N.E.2d 841 (9th Dist.); *Wallace v. Ganley Auto Group*, 8th Dist. Cuyahoga No. 95081, 2011-Ohio-2909, ¶ 44.

{¶ 28} The Sebolds argue that the arbitration provision was procedurally unconscionable because Latina drafted the contract without their input; the

arbitration clause was buried in the contract, and there were essential terms missing from the arbitration clause. The Sebolds further claim they were not familiar with arbitration, were not sophisticated consumers or represented by an attorney during contract negotiation, and no one from Latina ever explained the process of arbitration to them. The Sebolds argue that Latina had unequal bargaining power over them because Latina had decades of experience building homes and Anthony Latina was the president of both local and statewide home builder associations.

{¶ 29} This court has previously rejected similar arguments made by consumers in a similar context. *See Conte v. Blossom Homes L.L.C.*, 2016-Ohio-7480, 63 N.E.3d 1245, ¶ 23 (8th Dist.), and *Neel* at ¶ 26. In *Conte*, this court found that the consumer was unable to establish procedural unconscionability where he alleged that his meeting with a builder was hurried, he had no knowledge of construction contracts or regulations, he did not understand what arbitration was, he was otherwise unable to understand the terms of the agreement, and he was pressured to sign the contract. *Id.* at ¶ 20-23. Similarly in *Neel*, the consumers claimed that the home builder was more knowledgeable regarding arbitration and they were rushed through the signing of the contract. *Id.*

{¶ 30} In both cases, this court found that the consumers could not establish procedural unconscionability:

> While the Neels claim they were rushed through the signing of the contract, the record shows that they met with Perrino several times before ultimately signing the contract. The Neels did not ask for more

time to review the contract, and nothing in the record indicates that they could not have done so. Similarly, the Neels argue that Perrino failed to explain the arbitration clause to them. Although they concede that they had the opportunity to ask questions, they apparently did not do so. Additionally, nothing in the record indicates that the Neels were pressured to sign the contract, or that Perrino was the only builder with whom they could have contracted. Finally, the Neels' claim that no one pointed out the arbitration clause to them is not persuasive to establish procedural unconscionability. The Neels were entering into a contract for a custom-built home worth over $300,000. Their status as consumers does not free them of their duty to read the contract they signed.

*Id.*

{¶ 31} In this case, the Sebolds met with Latina several times before entering into the contract to remodel their home. They negotiated the contract and then renegotiated it when the bank would not undersign the first contract. There is no evidence they were rushed through the negotiations, pressured to sign the contract, or did not understand the process. The Sebolds also could have hired an attorney to review the contract had they so chosen.

{¶ 32} Thus, under the totality of the circumstances of this case, the arbitration provision is not procedurally unconscionable. Because the Sebolds bore the burden of proving that the arbitration agreement was both procedurally and substantively unconscionable, and we have found that the agreement was not procedurally unconscionable, we need not consider whether it was also substantively unconscionable.

{¶ 33} In light of the above, the first assignment of error is overruled.

## Ohio Home Solicitation Sales Act

{¶ 34} In the second assignment of error, the Sebolds argue that the trial court erred in enforcing the arbitration clause when there was unrebutted evidence that Latina had violated the HSSA and the Sebolds had validly cancelled the contract under the Act. The Sebolds contend that not only was the arbitration clause unenforceable but the entire contract should be cancelled under the HSSA. For the following reasons, we find this issue premature.

{¶ 35} The Act was enacted to decrease high-pressure sales tactics that are sometimes employed during in-home solicitations by providing consumers with a cooling-off period within which the transaction may be cancelled. *Wisniewski v. Marek Builders, Inc.*, 2017-Ohio-1035, 87 N.E.3d 696, ¶ 7 (8th Dist.), citing *Garber v. STS Concrete Co., L.L.C.*, 2013-Ohio-2700, 991 N.E.2d 1225, ¶ 12 (8th Dist.). Under the HSSA, a home solicitation sale must include a written agreement that contains a statement of the buyer's right to cancel the contract until midnight of the third business day after the day on which the buyer signs the contract. R.C. 1345.22 and 1345.23. Where no such provision is contained in the agreement, the buyer's right to cancel the contract does not expire. R.C. 1345.23(C).

{¶ 36} In *Wisniewski*, a divided panel of this court found that the HSSA applied to a contract that contained an arbitration clause where the homeowner sought to cancel the contact under the HSSA. This court found that because the defendant-builder did not dispute that the contract violated the HSSA and the

homeowner exercised his right to cancel the contract, the trial court erred in granting the builder's motion to stay the case pending arbitration. *Id.* at ¶ 21.

{¶ 37} This case is easily distinguishable. Latina disputes that its contract violates the HSSA and disputes that the Sebolds have the right to cancel their contract with Latina under the HSSA.

{¶ 38} Perhaps more importantly, claims that the contract itself is void or invalid based on an alleged HSSA violation are decisions that are best left for the arbitrator to decide. *See Taylor Bldg. Corp.*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, at ¶ 41 (claims that relate to the contract generally, rather than the arbitration clause specifically, are properly left to the arbitrator); *see also Wisniewski* at ¶ 36 (Keough, J., dissenting).

{¶ 39} "This court has repeatedly held that 'in the face of a valid arbitration clause, questions regarding the validity of the entire contract must be decided in arbitration.'" *Wisniewski* at ¶ 37 (Keough, J., dissenting), citing *Coble v. Toyota of Bedford*, 8th Dist. Cuyahoga No. 83089, 2004-Ohio-238, ¶ 20, quoting *Weiss v. Voice/Fax Corp.*, 94 Ohio App.3d 309, 313, 640 N.E.2d 875 (1st Dist.1994); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.* 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).

{¶ 40} We have already determined that the trial court did not err when it determined that the arbitration clause in the contract was valid; thus, a determination whether the HSSA applies to the subject contract and issues

surrounding whether the Sebolds could cancel the contract under the HSSA would be premature for this court to determine at this time.

{¶ 41} The second assignment of error is overruled.

{¶ 42} Judgment affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

LARRY A. JONES, SR., PRESIDING JUDGE

EILEEN A. GALLAGHER, J., and
MICHELLE J. SHEEHAN, J., CONCUR