[Cite as *Cuyahoga Supply & Tool, Inc. v. BECDIR Constr. Co.*, 2024-Ohio-1375.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

CUYAHOGA SUPPLY & TOOL, INC., :

    Plaintiff-Appellee, :

                                No. 113096

    v. :

BECDIR CONSTRUCTION COMPANY, :

    Defendant-Appellant. :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** April 11, 2024

---

Civil Appeal from the Bedford Municipal Court
Case No. 23CVF00193

---

***Appearances:***

Ted S. Friedman, *for appellee.*

Harrington, Hoppe & Mitchell, Ltd., and Matthew M. Ries, *for appellant.*

FRANK DANIEL CELEBREZZE, III, J.:

{¶ 1} Appellant BECDIR Construction Company ("BECDIR") brings this appeal challenging the trial court's denial of its motion to dismiss or alternative motion to compel arbitration and stay proceedings. After a thorough review of the

applicable law and facts, we reverse the judgment of the trial court and remand this matter for further proceedings.

## I. Factual and Procedural History

{¶ 2} This matter arises from a suit upon a mechanics lien filed by appellee Cuyahoga Supply & Tool, Inc. ("Cuyahoga Supply") against BECDIR. Cuyahoga Supply provided building supplies and materials for a construction project to BECDIR pursuant to a purchase order. The purchase order contained an arbitration provision that applied to "[a]ny dispute, controversy or claim arising out of or related to this contract * * * ." The purchase order was not signed by anyone for Cuyahoga Supply or BECDIR; however, it contained a term that stated, "Performance constitutes acceptance of terms and conditions stated herein."

{¶ 3} When BECDIR failed to pay for the supplies and materials, Cuyahoga Supply filed a mechanics lien against it. BECDIR then submitted a notice to commence suit to Cuyahoga Supply, informing it that BECDIR intended to dispute the lien and asserting that the funds were not owed to Cuyahoga Supply due to its failure to perform according to the terms of the purchase order and contract.

{¶ 4} Cuyahoga Supply subsequently filed suit alleging a claim for breach of contract and submitted two invoices dated July 8, 2022, and August 11, 2022. BECDIR moved to dismiss the case or, in the alternative, to compel arbitration and stay proceedings. With its motion, BECDIR submitted the affidavit of its project manager, along with a copy of the purchase order containing the arbitration provision.

**{¶ 5}** The trial court held a hearing where both parties presented arguments. After the hearing, BECDIR filed a posthearing brief to "provide additional legal authority and clarification" of issues raised at the hearing. Cuyahoga Supply submitted the affidavit of its owner, wherein he stated that he had never agreed to resolve any dispute by way of arbitration and specifically did not sign the purchase order to convey his opposition to the arbitration clause.

**{¶ 6}** The court denied BECDIR's motion to dismiss/motion to compel and stay, finding that no arbitration clause applied to the case. BECDIR then filed the instant appeal, raising one assignment of error for our review:

> The trial court erred in denying appellant's motion to dismiss or compel arbitration and stay proceedings pursuant to R.C. 2711.02(B) because this dispute arises from the parties' contract, which contains a mandatory arbitration provision.

## II. Law and Analysis

**{¶ 7}** Generally, an appellate court reviews a trial court's decision to grant or deny a motion to compel arbitration or stay the proceedings under the abuse-of-discretion standard. *U.S. Bank, N.A. v. Wilkens*, 8th Dist. Cuyahoga No. 96617, 2012-Ohio-263, ¶ 13; *Milling Away, L.L.C. v. UGP Properties, L.L.C.*, 8th Dist. Cuyahoga No. 95751, 2011-Ohio-1103, ¶ 8. The term abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). An abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a

matter over which it has discretionary authority. *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35.

{¶ 8} Nevertheless, a trial court's decision granting or denying a motion to compel arbitration or a motion to stay is subject to de novo review on appeal because such cases generally turn on issues of contractual interpretation. *McFarren v. Emeritus at Canton*, 2013-Ohio-3900, 997 N.E.2d 1254, ¶ 13 (5th Dist.); *Hudson v. John Hancock Fin. Servs.*, 10th Dist. Franklin No. 06AP-1284, 2007-Ohio-6997, ¶ 8; *McCaskey v. Sanford-Brown College*, 8th Dist. Cuyahoga No. 97261, 2012-Ohio-1543, ¶ 7.

{¶ 9} Ohio has a strong public policy favoring arbitration of disputes, and there is a presumption favoring arbitration that arises when the dispute falls within the scope of an arbitration provision. *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 25-27. "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Sebold v. Latina Design Build Group, L.L.C.*, 2021-Ohio-124, 166 N.E.3d 688, ¶ 10 (8th Dist.), citing *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

{¶ 10} We note, however, that "parties cannot be compelled to arbitrate a dispute in which they have not agreed to submit to arbitration." *Marks v. Morgan Stanley Dean Witter Commercial Fin. Servs.*, 8th Dist. Cuyahoga No. 88948, 2008-Ohio-1820, ¶ 15, citing *Piqua v. Ohio Farmers Ins. Co.*, 84 Ohio App.3d 619, 621, 617 N.E.2d 780 (2d Dist.1992); *St. Vincent Charity Hosp. v. URS Consultants, Inc.*,

111 Ohio App.3d 791, 793, 677 N.E.2d 381 (8th Dist.1996); *Shumaker v. Saks, Inc.*, 163 Ohio App.3d 173, 2005-Ohio-4391, 837 N.E.2d 393 (8th Dist.).

{¶ 11} R.C. 2711.02(B) permits the trial court, upon application of one of the parties, to stay litigation in favor of arbitration pursuant to a written arbitration agreement. The statute provides as follows:

> If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration.

{¶ 12} The trial court did not provide any reasoning or analysis in its entry denying the motion to dismiss or alternative motion to stay and compel arbitration. However, as our review is de novo, we conduct our own examination and interpretation of the contract and arbitration provision. It does appear that at the hearing, the trial court questioned whether the purchase order, which contained the arbitration provision, was for the same materials and supplies that were listed on the invoices submitted by Cuyahoga Supply with its complaint. There is no arbitration clause reflected on the invoices. According to the affidavit of BECDIR's project manager, the purchase order was requested by Cuyahoga Supply before it would complete the order.

{¶ 13} At oral argument, Cuyahoga Supply disputed that the products that were the subject of the purchase order were the same as those listed on the invoices.

However, in the trial court and in its appellate brief, Cuyahoga Supply only argued that it did not sign the purchase order and thus, there was no "meeting of the minds" with regard to the arbitration provision.

{¶ 14} We find no merit to Cuyahoga Supply's argument. This court has previously held that "a written contract containing an arbitration agreement does not need to be signed to be enforceable." *Dorgham v. Woods Cove III*, 8th Dist. Cuyahoga No. 106838, 2018-Ohio-4876, ¶ 15, citing *PNC Mtge. v. Guenther*, 2d Dist. Montgomery No. 25385, 2013-Ohio-3044, ¶ 15 (signed writing is not necessary to a settlement contract) and *Seyfried v. O'Brien*, 2017-Ohio-286, 81 N.E.3d 961, ¶ 19, fn. 3 (8th Dist.) (lack of a signature does not in itself show that the party has not consented to arbitration). However, *Dorgham* went on to clarify that "this is true only when it is the intention of the parties to be bound by the terms and conditions of the subsequent written agreement, including the arbitration provision." *Id.* The *Dorgham* Court found that, after reviewing the appellants' actions and assertions in the case, there was no "meeting of the minds" between the parties with the intention to be bound by the subsequent written agreement. *Id.*

{¶ 15} The invoices attached to Cuyahoga Supply's complaint are dated July 8, 2022, and August 11, 2022; these invoices contain no arbitration provision. The purchase order containing the arbitration clause is originally dated March 16, 2022, but is also labeled "REVISED 8/10/22." The purchase order contains places for a representative of BECDIR and a representative of Cuyahoga Supply to sign. It

states, "Please sign both copies and return to our office for signature." There is no dispute that the purchase order was never signed.

{¶ 16} Cuyahoga Supply asserts that its representative purposely did not sign the purchase order because it did not agree to the arbitration clause. However, Cuyahoga Supply took no action to convey its disagreement and instead performed its end of the contract by supplying the materials and supplies ordered in the purchase order. Consequently, we cannot find that there was no "meeting of the minds" between the parties with regard to the intention to be bound by the purchase order.

{¶ 17} Cuyahoga Supply's performance under the purchase order constituted its acceptance of the terms contained therein, including the arbitration clause. Thus, the dispute between the parties, which arose out of the purchase order, was required to be arbitrated. The trial court therefore erred in denying the motion to compel arbitration and stay proceedings.

### III. Conclusion

{¶ 18} The trial court erred in denying BECDIR's motion to compel arbitration and stay the proceedings below. BECDIR's sole assignment of error is sustained, and the judgment of the trial court is reversed. This matter is remanded for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK DANIEL CELEBREZZE, III, JUDGE

EILEEN A. GALLAGHER, P.J., CONCURS;
SEAN C. GALLAGHER, J., DISSENTS (WITH SEPARATE OPINION)


SEAN C. GALLAGHER, J., DISSENTING:

{¶ 19} I respectfully disagree with the majority's conclusion that an error occurred. Cuyahoga Supply & Tool, Inc. ("CST"), initiated this small-claims action seeking to recover $9,120.44 from BECDIR Construction Company based on BECDIR's failure to render payments on two invoices. The first, dated July 8, 2022, indicated a delivery of 178 22-ounce tubes of two-part epoxy valued at $2,604.14 and one duo-epoxy gun valued at $67.50. The order totaled $2,671.64. The second invoice, dated August 11, 2022, included 651 pieces of #4 fiberglass rebar in 20-foot sections, representing 13,020 feet of rebar valued at $5,728.80, along with a $720 delivery fee. That invoice totaled $6,448.80. In total, those invoices equaled the $9,120.44 sought in the complaint.

{¶ 20} In response, BECDIR claimed that an unsigned purchase order, originally dated March 2022 but delivered to CST on August 10, 2022, was the binding contract between the parties. The unsigned purchase order submitted,

however, required a single delivery in June 2022, a legal impossibility given the August submission. It is undisputed that neither party signed that agreement, nor is there any indication that a June delivery occurred for the purpose of demonstrating "performance constitut[ing] acceptance of [the] terms and conditions" of the unsigned purchase order. *See* R.C. 1302.09 (detailing methods of acceptance in the sale of goods).

{¶ 21} In an effort to demonstrate that a binding arbitration agreement existed over the July and August invoices, BECDIR submitted an email, dated August 10, 2022, discussing a delivery needed for the next day, August 11 (corresponding to one of the two invoices). The email expressly indicated the August 11 delivery was based on the terms the parties had discussed. There is no written agreement memorializing that supposed discussion. Attached to the emails was a document purporting to be the purchase order dated March 16, 2022, but noting that a revision occurred on August 10, 2022. That purchase order purportedly required a June 2022 delivery of a specified quantity of two items: (1) 13,015 feet of Number 4 GFRP deformed bars for a total price of $5,726.60 and (2) 178 22-ounce, two-part cartridges of 1736 EA dowel holes with non-shrink, non-metallic grout for a price of $2,604.14. The total for the purchase order was $8,330.74, to which a $720 delivery fee could be added (totaling $9,050.74, but still an approximate $70 difference in pricing compared to the invoices).

{¶ 22} It is undisputed at this point that the August 11 delivery only included the 13,020 feet of rebar. Thus, the invoices differ from the unsigned purchase order

in pricing, quantity, inclusion of additional goods, and date of required delivery; a point emphasized by the municipal court during the hearing. Despite all the material discrepancies, with no accompanying written agreement to alter any of the material terms with respect to every other contractual condition in the unsigned purchase order, BECDIR nonetheless seeks to enforce the arbitration provision in isolation.

{¶ 23} Although the purchase order indicates that "performance constitutes acceptance of the terms and conditions[,]" there is no evidence that the disputed invoices were in fulfillment of the purchase order, considered an offer to make a contract that unambiguously required one delivery in June 2022. *See* R.C. 1302.09 (detailing methods of acceptance in the sale of goods); R.C. 1302.20 (delivery to be in single lot unless otherwise specified).

{¶ 24} The revised purchase order sent in August 2022 cannot apply to the July invoice based on the timing alone, and in light of the fact that CST never signed the purchase order predating the June delivery, CST was under no obligation from the record presented to comply with the original form of the purchase agreement. Because the purchase order was never signed, the only delivery that would constitute acceptance of the proposal would be a June delivery in compliance with the purchase order as drafted by BECDIR, absent evidence of some other agreement. In general, without a signed purchase order, in the absence of any other binding agreement, the supplier is under no obligation to proceed. A purchase order is binding only if signed or if the supplier adheres to all material terms indicated in the purchase order, which

necessarily requires a timely delivery of all the specified goods absent some other contractual gap-filling provision that has not been discussed in this appeal.

{¶ 25} As the purchase order expressly indicates, the document is "the complete agreement of the parties" and "no other agreements except as mutually agreed in writing can amend this document."  By not signing the purchase order before the July delivery, and by failing to deliver the requested goods in June, CST amply demonstrated its intent to not be bound by the terms presented in the purchase order and that there was no meeting of the minds.  The July invoice has not been demonstrated to be controlled by the terms of the August 10 purchase order.

{¶ 26} Further, nothing demonstrates that the August 10 purchase order applied to the goods delivered on August 11 as reflected in that invoice.  Although it may have been BECDIR's intent to rely on the purchase order, the one submitted did not reflect the agreement of the parties based on the discrepancies between the August 11 limited delivery and that requested in the August 10 purchase order specifying a June 2022 delivery date of all goods.

{¶ 27} The revised purchase order submitted to CST in August 2022 cannot form the agreement for the previous July delivery and does not reflect the invoiced materials delivered on August 11, which expressly occurred through outside discussions according to the email provided by BECDIR.  The only way BECDIR can be successful is to apply the purchase order's arbitration provision to the exclusion of every other term: the dates of delivery; the number of products ordered; the goods

ordered; and the total billed. Despite none of those terms reflecting the transaction, BECDIR seeks to enforce the arbitration provision. BECDIR cannot selectively enforce the parts of the unsigned agreement on which it agrees, while disregarding the lack of any meeting of the minds as to the remainder of the proposed contract.

{¶ 28} It is for this reason that I respectfully dissent. BECDIR bore the burden of demonstrating error, and it has not demonstrated that the unsigned purchase agreement applied to the separate invoices underlying the small claims action. The municipal court did not err in denying the motion to dismiss or compel arbitration. I would affirm and remand this matter for further proceedings.