[Cite as *Mayfield Auto Group, L.L.C. v. JS Mayfield Partners, L.L.C.*, 2024-Ohio-3105.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

MAYFIELD AUTO GROUP, LLC, ET AL., :

      Plaintiffs-Appellants,        :

                            Nos. 113121 and 113122

      v.                         :

JS MAYFIELD PARTNERS, LLC, ET AL., :

      Defendants-Appellees.        :

---

**JOURNAL ENTRY AND OPINION**

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 15, 2024

---

Civil Appeals from the Cuyahoga County Common Pleas Court
Case Nos. CV-23-976295 and CV-23-976346

---

*Appearances:*

Berns, Ockner & Greenberger, LLC, Jordan Berns, Paul M. Greenberger, Elizabeth Wells Rothenberg, and Majeed G. Maklouf, *for appellants*.

Singerman, Mills, Desberg & Kauntz, Co., L.P.A., and Michael R. Stavnicky, *for appellees*.

ANITA LASTER MAYS, J.:

**{¶1}** In this consolidated appeal, plaintiffs-appellants Mayfield Auto Group ("MAG") and 6180 Through 6200 Mayfield Road ("MAY") (collectively known as

"the appellants"), appeal the trial court's decision finding that the case in controversy should go to arbitration and asks this court to reverse the trial court's decision, find the parties' controversy is not arbitrable, and remand this matter to the trial court. We affirm the trial court's decision.

{¶2} Defendants-appellees, JS Mayfield Partners and BE-2 Mayfield Partners, LLC ("the appellees"), are the majority owners and landlords of a commercial property where MAG is a tenant who leases the property, using it as the car dealership owned by Nick Mayer ("Mayer"). Further, in 2014, the property was owned under a tenants-in-common agreement by the appellees and the Elks, a nonparty to this matter. MAY is a company created for the sole purpose of purchasing a minority tenant in common interest in the property. Mayer owns both appellants.

{¶3} Before the creation of MAY, under the lease, MAG had an option to purchase the property. In the summer of 2022, MAG attempted to purchase the property by filing an arbitration under the lease. However, the appellees argued that the option to purchase had expired and opposed MAG's demand to enforce the option to purchase the property. The arbitrator found in favor of the appellees, holding that the option to purchase the property had lapsed and MAG had no right to buy the property and could continue as a tenant.

I.    **Facts and Procedural History**

**{¶4}** According to the lease agreement signed on March 10, 2014, by the appellees and MAG, Section 21.1 of the lease obligated the appellees to provide MAG no later than eight years subsequent to the date of signing, a right to offer to purchase the property. The appellees were required to send MAG a written notice that had to include an offer price, and the closing of the sale of the property was to occur within 90 days from the date of the offer notice. Once MAG received the offer notice, they had 15 days to accept the offer in writing.

**{¶5}** According to the lease, if MAG wanted to accept the offer notice, but not the appellees' purchase price, MAG was obligated to notify the appellees and both parties were to hire a qualified real estate appraiser to conduct an appraisal on the property. If the two appraisers could not agree on an appraised value, then a third qualified real estate appraiser would be hired to appraise the property, and the average of the three appraisals would be the sales price of the property. If MAG or the appellees failed to hire an appraiser within ten business days, then the other party's appraiser would determine the fair market sales price of the property.

**{¶6}** According to the arbitrator's decision, MAG contacted the appellees prior to 2022 about providing MAG with an offer notice. On January 19, 2022, MAG, in a letter, reminded the appellees that, in accordance with the lease, the appellees had until March 10, 2022, to send MAG an offer notice. The appellees sent MAG an offer notice on March 8, 2022, with an offer price of $13,600,000 based on an appraisal obtained from Ritley-Huber, LLC. Both parties agreed that

the closing of the property had to take place by June 7, 2022, which was 90 days from the date of the offer notice.

{¶7} On March 16, 2022, MAG sent an acceptance of the offer notice to the appellees but disagreed with the purchase price and wished to proceed with having the property appraised. When the appellees received MAG's notice, the appellees informed MAG it believed MAG's acceptance notice did not comply with Section 21.1 of the lease. On March 25, 2022, MAG informed the appellees that it had selected Ford Motor Credit Company as its lender and Cushman & Wakefield as its appraiser. However, Cushman & Wakefield were not approved appraisers for Ford Motor Credit Company.

{¶8} The appellees expressed this concern to MAG, and MAG informed the appellees that it changed its lender to Farmers National Bank Corp. and Douglas Sloan of Integra Realty Resources as its appraiser. On April 14, 2022, the appellees wrote to MAG expressing their concern regarding the number of days from the date the offer notice was sent to MAG to the date MAG selected Farmers National Bank Corp. as its lender. The appellees also reminded MAG of the 90-day closing date and informed MAG that any failure of MAG to be ready to close by June 7, 2022, would be a default under the Right of First Refusal in accordance with the lease. The appellees expressed, for a second time, that MAG's acceptance notice was defective.

{¶9} On April 19, 2022, ten business days following MAG's notice of its lender selection, the appellees informed MAG that it selected Tricomi & Associates to conduct its appraisal. The appellees also requested that MAG agree to modify the appraisal process in the lease due to the time constraints. On April 26, 2022, MAG declined the appellees' requests to modify the appraisal process and stated that it intended to complete the appraisal process in accordance with Article 21 of the lease.

{¶10} On May 19 and 20, 2022, the appellees and MAG exchanged their appraisals. The appellees' appraisal was for $13,000,000 and MAG's appraisal was for $9,000,000. MAG requested that the appellees' appraiser contact MAG's appraiser and acknowledged the closing date of June 7, 2022. It is undisputed that the closing of the property did not happen on or before June 7, 2022.

{¶11} According to the arbitrator's decision, both MAG and the appellees raised several issues in arbitration, including whether (i) appellees' offer notice contained noncustomary terms, (ii) MAG satisfied its obligations under the lease by not accepting all terms and conditions, except price, in its acceptance notice, (iii) MAG's appraisal complied with Section 21.2 of the Lease, and (iv) time is of the essence relating to the closing. The arbitrator found that time was of the essence was dispositive of the dispute. The arbitrator did not address the remaining issues raised.

{¶12} In the arbitrator's decision, it stated MAG's actions did not demonstrate a commitment to closing by June 7, 2022. Additionally, the arbitrator pointed to the fact that MAG changed its lender and did not finalize its selection until April 5, 2022. Because a qualified real estate appraiser, in accordance with Section 21.2 of the lease, must have been on the approval list of the mortgage company, the appellees could not select its appraiser until MAG informed the appellees of its chosen lender. The arbitrator also noted that the appellees' actions complied with the lease while MAG's did not. According to the arbitrator, MAG could have "streamlined any negotiations regarding an agreement for purchase and sale" of the property by sending their proposed terms any time before the closing date of June 7, 2022. Additionally, the arbitrator highlighted the fact that MAG acknowledged the June 7, 2022 deadline in its May 20, 2022 letter but made it clear that it did not intend for the closing to occur by that date.

{¶13} The arbitrator decided that because time was of the essence to close the transaction and the transaction did not close by June 7, 2022, pursuant to Section 21.1 of the lease, all rights of MAG pursuant to the right to offer are rescinded, terminated, and revoked. The appellees are free to sell the property to any party.

{¶14} On January 12, 2023, after losing the arbitration, Mayer formed a new entity, MAY, and purchased a minority interest in the property from the Elks, thus resulting in the property being owned by the appellees, BE-2 Mayfield Partners,

and MAY. Through MAY, Mayer extended the lease of MAG for another ten years. In other words, Mayer extended his own lease. However, the appellees argued that this extension is not possible under the tenants-in-common agreement. The appellees accused MAY of being in violation of the tenants-in- common agreement.

**{¶15}** MAG sued all three owners including the appellees, BE-2 Mayfield Partners, and MAY stating that there was a controversy between the parties as to whether MAG has validly extended the initial term of the lease for the first renewal term of ten years. So, in effect, Mayer sued himself.

**{¶16}** In response, the appellees filed a motion to stay litigation and compel arbitration, and MAG filed a brief in opposition to the motion. On August 9, 2023, a hearing was held on the motion. On August 10, 2023, the trial court granted the appellees' motion. Journal Entry No. 154820490 (Aug. 10, 2023).

**{¶17}** The appellants filed separate appeals that this court consolidated. MAG assigned the following two errors, in Appeal No. 113121 for our review:

1. The trial court erred in staying this matter pending arbitration when, pursuant to R.C. 2711.01(B)(1), this matter cannot be subject to arbitration because it is a controversy involving the title or the possession of real estate; and

2. The trial court erred in staying this matter pending arbitration when appellees have no right to elect arbitration without appellant 6180 Through 6200 Mayfield Road, LLC also electing arbitration.

**{¶18}** MAY assigned the following three errors, in Appeal No. 113122, for our review:

1. The trial court erred in staying this matter pending arbitration because the dispute at issue arises under a tenants in common agreement that does not include an arbitration provision;

2. The trial court erred in staying this matter pending arbitration pursuant to an arbitration provision contained in a lease because the lease's arbitration clause does not apply to the parties' dispute at issue here; and

3. The trial court erred in staying this matter pending arbitration pursuant to an arbitration provision contained in a written lease where the lease provides only for arbitration of disputes between the landlord on the one hand and the tenant on the other, but nowhere does the lease provide for the arbitration of disputes between and among only the tenants in common that collectively comprise said "Landlord."

We will combine and address the first and second assignments of error from each brief that are dispositive of the case. The third assignment of error is moot. App.R. 12(A)(1)(c).

## II. Arbitration Agreement

### A. Standard of Review

{¶19} "Generally, an appellate court reviews a trial court's decision to grant or deny a motion to compel arbitration or stay the proceedings under the abuse-of-discretion standard." *Cuyahoga Supply & Tool, Inc. v. BECDIR Constr. Co.*, 2024-Ohio-1375, ¶ 7 (8th Dist.), citing *U.S. Bank, N.A. v. Wilkens*, 2012-Ohio-263, ¶ 13 (8th Dist.); *Milling Away, L.L.C. v. UGP Properties, L.L.C.*, 2011-Ohio-1103, ¶ 8 (8th Dist.). "The term abuse of discretion 'implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *Id.*, quoting *Blakemore v.*

*Blakemore*, 5 Ohio St.3d 217, 219 (1983). "An abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority." *Id*., citing *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

**{¶20}** However, the standard changes when the dispute involves a contractual interpretation. "Nevertheless, a trial court's decision granting or denying a motion to compel arbitration or a motion to stay is subject to de novo review on appeal because such cases generally turn on issues of contractual interpretation." *Id.* at ¶ 8, citing *McFarren v. Emeritus at Canton*, 2013-Ohio-3900, ¶ 13 (5th Dist.); *Hudson v. John Hancock Fin. Servs.*, 2007-Ohio-6997, ¶ 8 (10th Dist.); *McCaskey v. Sanford-Brown College*, 2012-Ohio-1543, ¶ 7 (8th Dist.). "Because this issue involves a matter of contract interpretation, it is subject to de novo review." *Westlake Servs., LLC v. Chandler*, 2023-Ohio-3714, ¶ 23 (8th Dist.). *See, e.g., Little Aquanauts, L.L.C. v. Makovich & Pusti Architects, Inc.*, 2021-Ohio-942, ¶ 8 (8th Dist.) (stating that a de novo standard of review applies "when evaluating the scope of an arbitration agreement, that is, whether a party has agreed to submit a certain issue to arbitration"), citing *Seyfried v. O'Brien*, 2017-Ohio-286, ¶ 18 (8th Dist.).

### B. Law and Analysis

**{¶21}** In the appellants' first assignment of error, they argue that the trial court erred in staying this matter pending arbitration because it is a controversy

involving the title to or the possession of real estate. R.C. 2711.01(B)(1). Specifically, the appellants contend that the controversy presented in this matter is whether the right of a tenant to exclusive possession of real property under its written lease expired on March 9, 2023, or if its right to possession has been extended to March 9, 2034.

{¶22} The appellees, however, argue that this case does not involve the title or possession of real estate, but simply an interpretation of a contract, the lease. The appellees cite to the tenant-in-common agreement that states that no tenant in common can occupy the property. The appellees contend that the appellants are improperly interpreting their agreement and, thus, must be arbitrated pursuant to the lease.

{¶23} "Ohio has a strong public policy favoring arbitration of disputes, and there is a presumption favoring arbitration that arises when the dispute falls within the scope of an arbitration provision." *Cuyahoga Supply & Tool, Inc.*, 2024-Ohio-1375, at ¶ 9 (8th Dist.), citing *Taylor Bldg. Corp. of Am. v. Benfield*, 2008-Ohio-938, ¶ 25-27 (12th Dist.). "'Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Id.*, quoting *Sebold v. Latina Design Build Grp., L.L.C.*, 2021-Ohio-124, ¶ 10 (8th Dist.), citing *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

{¶24} "We note, however, that 'parties cannot be compelled to arbitrate a dispute in which they have not agreed to submit to arbitration.'" *Id.* at ¶ 10, quoting

*Marks v. Morgan Stanley Dean Witter Commercial Fin. Servs.*, 2008-Ohio-1820,

¶ 15 (8th Dist.), citing *Piqua v. Ohio Farmers Ins*. Co., 84 Ohio App. 3d 619, 621

(2d Dist. 1992); *St. Vincent Charity Hosp. v. URS Consultants, Inc.*, 111 Ohio

App.3d 791, 793 (8th Dist. 1996); *Shumaker v. Saks, Inc,* 2005-Ohio-4391 (8th

Dist.).

{¶25} "As our review is de novo, we conduct our own examination and

interpretation of the contract and arbitration provision." *Id*. at ¶ 12. Section 23.1

of the lease contains the arbitration clause that is the subject of the dispute. It

states:

> Subject to the provisions of Section 23.4 below, in the event of any
> dispute or disagreement arising under this Lease, either party may
> elect to have such dispute or disagreement settled by arbitration
> pursuant to the provisions of this Article 23. In such event, the party
> electing arbitration shall give notice of such election to the other party
> and shall in such notice appoint a person as an arbitrator. Within
> fifteen (15) days after receipt of such notice, the other party shall, by
> notice to the party electing arbitration, appoint a second person as an
> arbitrator. The two (2) arbitrators thus appointed shall appoint a
> third person, and such three (3) arbitrators shall as promptly as
> possible resolve such matter, provided, however, that (i) if the second
> arbitrator shall not have been appointed within the aforesaid fifteen
> (15) day period; or (ii) if such second arbitrator is so appointed, but
> the two (2) arbitrators are unable to agree upon the selection of the
> third arbitrator within ten (10) days after the appointment of the
> second arbitrator, then the arbitrators so appointed shall promptly
> give written notice to the parties to this Lease of such failure to
> appoint or to agree, and, if the parties hereto fail to agree upon the
> selection of such second or third arbitrator or both, as the case may
> be, within ten (10) days after receipt of such notice, then either of the
> parties may request of the other party in writing that such
> appointments be made by the American Arbitration Association (or
> any successor organization thereto).

{¶26} We note that the parties signed the lease agreeing that either party may elect to have such dispute or disagreement settled by arbitration pursuant to the provisions of this Article 23. The disagreement between the parties concerns whether the appellees can extend the lease even though they are also tenants in common. "An arbitration clause is considered 'a contract within a contract, subject to revocation on its own merits' so that 'an alleged failure of the contract in which it is contained does not affect the provision itself.'" *Cook v. Richard T. Kiko Agency, Inc.*, 2023-Ohio-552, ¶ 9 (7th Dist.), quoting *Taylor*, 2008-Ohio-938, at ¶ 14 (12th Dist.). "In general, there is a presumption in favor of arbitration when a claim is within the scope of the arbitration provision." *Id.*, citing *Williams v. Aetna Fin. Co.*, 1998-Ohio-294. "'[W]ith limited exceptions, an arbitration clause is to be upheld just as any other provision in a contract should be respected.'" *Id.*, quoting *id.*

{¶27} The appellants argue that the facts in *French v. Ascent Resources-Utica, L.L.C.,* 2022-Ohio-869, are analogous to the facts in our instant case and that the decision in *French* is controlling. In *French,* the case involved a discretionary appeal from a judgment of the Seventh District Court of Appeals that presented a single question: "[I]s an action seeking a determination that an oil and gas lease has expired by its own terms a controversy 'involving the title to or the possession of real estate' so that the action is exempt from arbitration under R.C.

2711.01(B)(1)?"  *Id.* at ¶ 1.  In *French*, the Supreme Court defined the following three words in the real estate exception: "involving" means relating closely or connecting to; "title" means a union of elements (ownership, possession, custody) that provides the legal right to control and dispose of property; and "possession" means the exercise of dominion over property.  *Id.* at ¶ 14.  "It was pointed out an oil and gas lease is a real property interest affecting title and possession, which can terminate by operation of law under its terms, in which event the lease would no longer encumber the land or affect title and possession."  *Cook* at ¶ 16, citing *French* at ¶ 15-18.

{¶28} The Court in *French* held:

> The action in this case is therefore a controversy involving the title to or the possession of real property.  If the action is successful, it will quiet title to the property, remove the leases as encumbrances to the property, and restore the possession of the land to the lessors.  If the action is unsuccessful, however, title to the land will remain subject to the leases, affecting the transferability of the property. . . .  Either way, the action closely involves the title to or the possession of real property and, under R.C. 2711.01(B)(1), the action is not subject to arbitration.

*Id.* at ¶ 20.

{¶29} However, the facts in our instant case can be distinguished from the facts in *French*.  The appellants, as the lessees, are not exercising dominion over the property.  The appellees hold controlling interest and governing control over the tenants-in-common agreement and, thus, have dominion over the property.  The issue between the parties is whether the appellants have breached their

tenants-in-common agreement with the appellees by extending their lease. Thus, the trial court did not err when it granted the appellees' motion to compel arbitration.

{¶30} Therefore, the appellants' first assignment of error is overruled.

{¶31} In the appellants' second assignment of error, they argue that the trial court erred in staying this matter pending arbitration when appellees have no right to elect arbitration without MAY also electing arbitration. However, the appellants' alleged error is misguided. The lease specifically states that "in the event of any dispute or disagreement arising under this Lease, either party may elect to have such dispute or disagreement settled by arbitration."

{¶32} "When asked to compel arbitration or to stay a case pending arbitration, it is generally a court that determines whether the parties agreed to arbitrate their dispute based on an examination of the language of the parties' agreement." *Chandler*, 2023-Ohio-3714, at ¶ 25. *See, e.g., Smith v. Javitch Block LLC*, 2023-Ohio-607 ¶ 23 (8th Dist.) ("The question of whether a controversy is referable to arbitration under the provisions of a contract is a question for a court to decide upon examination of the contract."), citing *Gibbons-Grable Co. v. Gilbane Bldg*. Co., 34 Ohio App.3d 170, 171 (8th Dist. 1986).

{¶33} The trial court determined that the parties agreed to arbitrate their dispute based on an examination of the lease agreement. We also determine that

the lease agreement's language provides that any issue arising out of the agreement is subject to arbitration.

**{¶34}** Therefore, the appellants' second assignment of error is overruled.

**{¶35}** Judgment affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

KATHLEEN ANN KEOUGH, A.J., and
MICHELLE J. SHEEHAN, J., CONCUR